# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

CONKLIN FANGMAN KANSAS
CITY, LLC,

      Plaintiff,

      v.

GENERAL MOTORS, LLC,

      Defendant.

)
)
)
)
)
)
)
)
)
)

No. 4:21-cv-0001-DGK

## ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff Conklin Fangman Kansas City, LLC, previously sold Buick, GMC, and Cadillac vehicles via a franchise agreement with Defendant General Motors, LLC ("GM"). In 2019, Plaintiff agreed to sell its dealership to a third party, Shawnee Automotive Group, LLC ("Shawnee"), contingent upon GM allowing Shawnee to relocate the dealership. GM denied the request to relocate. Plaintiff later sold the dealership to Shawnee for a lesser price, and claims damages as a result of GM's disapproval of the relocation request.

Now before the Court is GM's motion to Dismiss for Failure to State a Claim. ECF No. 16. For the reasons stated below, the motion is GRANTED.

### Standard of Review

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). However, "the Court is not bound to accept as true a legal conclusion couched as a factual allegation." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)).  To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the Court construes it liberally and draws all reasonable inferences from the facts in Plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).  The Court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).  Matters necessarily embraced by the pleadings include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller*, 688 F.3d at 931 n.3). In cases involving contracts, these materials include the contract documents regardless of whether the plaintiff attaches these documents to the complaint. *Id.* at 526–27.

GM attached a number of documents to the instant motion.  Three of these—the Buick GMC Dealer Sales and Service Agreement, ECF No. 17-1; the Cadillac Dealer Sales and Service Agreement, ECF No. 17-2; and the 2015 Dealer Sales and Service Agreement Standard Provisions, ECF No. 17-3—are contract documents necessarily embraced by the pleadings.  In addition, Plaintiff concedes that the following documents are "arguably" embraced by the pleadings: Plaintiff's January 17, 2020, complaint before the Missouri Administrative Hearing Commission,

ECF No. 17-6; Plaintiff's voluntary dismissal of this complaint, ECF No. 17-9; amendments to the Cadillac and Buick GMC asset purchase agreements between Plaintiff and Shawnee Automotive Group, LLC, ECF No. 17-10; and Plaintiff's September 1, 2020, notice to GM that it had sold its assets and terminated the franchises, ECF No. 17-11. Suggestions in Opp'n, ECF No. 29. The Court therefore considers these documents in ruling on this motion to dismiss. [1]

## Factual Background

Plaintiff Conklin Fangman Kansas City, LLC, is a limited liability company organized under Missouri law. Compl. ¶ 1, ECF No. 1. Plaintiff operated a car dealership in located at 3200 Main Street, Kansas City Missouri ("Main Street Site"). Compl. ¶ 3. Defendant GM is a manufacturer, franchisor, and distributor of GMC, Buick, and Cadillac vehicles. Compl. ¶ 4. At some time prior to 2008, GM granted Plaintiff franchises[2] for Buick, GMC, and Cadillac vehicles. Compl. ¶ 22. At some point thereafter—but before GM's 2008 reorganization—GM requested Plaintiff move the dealership to "Auto Row," an area with several other car dealers which is near an interstate highway. Compl. ¶ 16–21. However, Plaintiff was not able to relocate the Conklin Franchises. Compl. ¶ 21.

---

[1] Plaintiff nonetheless accuses GM of "cherry-picking" relevant documents which support its motion to dismiss and of concealing "harmful internal documentation." Suggestions in Opp'n at 8–9, ECF No. 29. Plaintiff speculates that such harmful documentation includes "GM's contemporaneous internal documentation (including third-party 'working analyses') as well as internal communications evidencing GM's actual 'subjective' methodologies, thought processes, inconsistencies, overstatements and outcome driven public decisions." *Id.* at 9. However, the Complaint includes no references to any such documents, nor contains any allegation which, if taken as true, would indicate that such documents exist. The Court will not deny a motion to dismiss so that Plaintiff may engage in a fishing expedition.

[2] The Missouri Motor Vehicle Franchise Practices Act ("MVFPA") defines a franchise as "a written arrangement or contract for a definite or indefinite period, in which a person grants to another person a license to use, or the right to grant to others a license to use, a trade name, trademark, service mark, or related characteristics, in which there is a community of interest in the marketing of goods or services, or both, at wholesale or retail, by agreement, lease or otherwise, and in which the operation of the franchisee's business with respect to such franchise is substantially reliant on the franchisor for the continued supply of franchised new motor vehicles, parts and accessories for sale at wholesale or retail." Mo. Rev. Stat. § 407.815 (8).

During GM's reorganization, it withdrew the Conklin franchises, but regranted them to Plaintiff in 2009. Compl. ¶ 22, ECF No. 1. It is not clear whether the parties maintained these franchises continuously through 2015. However, in September 2015, the parties signed two franchise agreements. Under one agreement, GM granted Plaintiff a franchise for Buick and GMC vehicles. Buick GMC Dealer Sales and Service Agreement, ECF No. 17-1. Under the other, GM granted Plaintiff a franchise for Cadillac vehicles. Cadillac Dealer Sales and Service Agreement, ECF No. 17-2. The parties agreed these franchises ("GM Franchises") would become effective on November 1, 2015 and would expire on October 31, 2020. ECF No. 17-1, 17-2. These agreements incorporate the terms of the Dealer Sales and Service Agreement 2015 Standard Provisions. ECF No. 17-3 ("Dealer Sales and Service Agreement").

Under the Dealer Sales and Service Agreement, if Plaintiff desired to sell one of the GM Franchises to another car dealer, it was first required to obtain GM's approval. Dealer Sales and Service Agreement, ¶ 12.2, ECF No. 17-3. Likewise, Plaintiff required GM's approval to change the dealer operator. *Id.* The Dealer Sales and Service Agreements also restricted Plaintiff's ability change its location:

> If Dealer wants to make any change in location(s) or Premises . . . Dealer will give General Motors written notice of the proposed change, together with the reasons for the proposal, for General Motors evaluation and final decision in light of dealer network planning considerations. No change in location . . . will be made without General Motors['] prior written authorization pursuant to its business judgment.
>
> . . .
>
> Nothing herein is intended to require the consent or approval of any dealer to a proposed relocation of any other dealer.

*Id.* ¶ 4.4.2, ECF No. 17-3; Compl. ¶ 35, ECF No. 1.

4

The Dealer Sales and Service Agreements defined GM's "dealer network planning considerations" as follows:

> Because General Motors distributes its Products through a network of authorized dealers operating from approved locations, those dealers must be appropriate in number, located properly, and have proper facilities to represent and service General Motors Products competitively and to permit each dealer the opportunity to achieve a reasonable return on investment if it fulfills its obligations under its [Dealer Sales and Service Agreement]. Through such a dealer network, General Motors can maximize the convenience of customers in purchasing Products and having them serviced. As a result, customers, dealers, and General Motors all benefit.

> To maximize the effectiveness of its dealer network, General Motors agrees to monitor marketing conditions and strive, to the extent practicable, to have dealers appropriate in number, size and location to achieve the objectives stated above. Such marketing conditions include General Motors sales and registration performance, present and future demographic and economic considerations, competitive dealer networks, the ability of General Motors existing dealers to achieve the objectives stated above, the opportunities available to existing dealers, the alignment of Line-Makes,[3] General Motors dealer network plan, and other appropriate circumstances.

Dealer Sales and Service Agreement ¶ 4.1, ECF No. 17-3; Compl. ¶ 35. The Dealer Sales and Service agreement states that it is to be governed according to Michigan law. *Id.* ¶ 17.12.

On October 16, 2019, Plaintiff entered into an Asset Purchase Agreement with Shawnee Automotive Group, LLC ("Shawnee"). Compl. ¶ 13; *See also* First Am. to Cadillac Asset Purchase Agreement ¶ A, ECF No. 17-10 ("Cadillac Amendment"); First. Am to Buick GMC Asset Purchase Agreement ¶ A, ECF No. 17-10 ("Buick GMC Amendment"). Plaintiff agreed to sell all of its assets to Shawnee, including the GM Franchises. Compl. ¶ 12–14. Plaintiff and Shawnee agreed that Shawnee would move the GM Franchises from the Main Street site across the state

---

[3] A Line-Make is "[a] brand of General Motors [motor vehicles], or a brand used to badge motor vehicles for another manufacturer." Dealer Sales and Service Agreement at 30, ECF No. 17-3.

line to 7000 West Frontage Road, Merriam, Kansas ("Proposed Relocation Site"). Compl. ¶ 12–14, ECF No. 1; *See also* Cadillac Amendment ¶ B; Buick GMC Amendment ¶ B. The Proposed Relocation Site, on Auto Row, was a more favorable business location than the Main Street Site, and would not have interfered with the relevant market area of other Buick, GMC, or Cadillac dealers. Compl. ¶¶ 16–20, 37–50. Plaintiff's and Shawnee's agreement ("Shawnee Asset Purchase Agreement") was contingent on GM approving the relocation of the GM Franchises to the Proposed Relocation Site. Compl. ¶ 14.

Plaintiff and Shawnee then requested GM approve the sale of the GM Franchises to Shawnee, approve the appointment of Doug Kinney, Shawnee's principal, as Dealer Operator of the GM Franchises, and approve moving the GM Franchises to the Proposed Relocation Site. *See* Compl. ¶ 23.

On December 20, 2019, GM sent a letter to Doug Kinney, Shawnee's principal. Compl. ¶ 23. GM approved Plaintiff's sale of the franchises to Shawnee and approved Doug Kinney's appointment as Dealer Operator. Compl. ¶ 25, ECF No. 1. However, GM denied the request to relocate the GM Franchises. Compl. ¶ 28. GM's letter listed several reasons for denying the relocation request:

> GM has conducted its analysis and determined that it has adequate representation in the proposed location, the market conditions, including but not limited to registration performance, present and future demographic and economic considerations, do not warrant approval, and the requested move is incongruent with GM's current network plan. In addition, the relocation of Buick GMC is subject to protest by other Buick GMC dealers, exposing GM to significant risk and expense. Accordingly, your request to relocate is denied as it is not in the best interests of GM's customers, its Buick GMC and Cadillac brands, or the Buick GMC and Cadillac dealer network in the Kansas City Metro Area.

Compl. ¶ 30.[4]

On January 16, 2020, Shawnee filed a complaint with the Missouri Administrative Hearing Commission ("MAHC") alleging that GM had violated the Missouri Motor Vehicle Franchise Practices Act ("MVFPA"). Compl. ¶ 55. On January 17, 2020, Plaintiff filed a complaint with the MAHC, alleging in three separate counts that GM violated the MVFPA by denying the relocation request. Compl. ¶ 56, ECF No. 1; Mo. Admin. Hr'g Commission Compl., ECF No. 17-6. Plaintiff, Shawnee, and GM were unable to resolve the dispute via mediation. Compl. ¶ 57.

On March 19, 2020, Plaintiff and Shawnee amended their previous asset purchase agreement. Cadillac Amendment, ECF No. 17-10; Buick GMC Amendment, ECF No. 17-10. They entered into two agreements, one corresponding to the Cadillac Franchise, and the other corresponding to the Buick GMC Franchise. *Id.* The parties agreed that, because GM had denied the request to move the franchises, that "[c]ertain sections of the Asset Agreement are needed to adjust the price of the Assets, modify the [c]losing [d]ate and remove all references to the relocation of the Dealership away from the [Main Street Site]." Cadillac Amendment ¶ C; Buick GMC Amendment ¶ C. Plaintiff agreed to sell its fixed assets to Shawnee for $374,625 and agreed to sell its miscellaneous assets and goodwill—including its intangibles—to Shawnee for $1,475,975. Cadillac Amendment ¶ 5; Buick GMC Amendment ¶ 5.

On March 27, 2020, Plaintiff moved to withdraw its MAHC complaint. Compl. ¶ 59, ECF No. 1; Voluntary Dismissal, ECF No. 17-9. The MAHC entered an order withdrawing the

---

[4] Plaintiff's complaint rests largely on the idea that it submitted a single "request" to GM—which included its request that GM approve the sale, appoint Doug Kinney as dealer operator, and approve the relocation—and that by approving the sale and appointment, but not the relocation, GM "wrongfully" bifurcated its request. Compl. ¶ 23–31. This is a legal conclusion couched as a factual allegation, and the Court need not accept it as true. *See Warmington*, 998 F.3d at 796.

7

complaint without prejudice on April 9, 2020.  *Id.*  Shawnee also withdrew its MAHC complaint, though it is not clear when this occurred.  Compl. ¶ 58.

On September 1, 2020, Plaintiff informed GM that it had sold its assets and was terminating the GM Franchises.  Notice, ECF No. 17-11.

### Procedural History

Plaintiff filed this seven-count complaint on January 4, 2021, taking issue with GM's denial of the relocation request.  Plaintiff alleges that GM violated three provisions of the MVFPA: Section 407.825(1), which makes it unlawful for a motor vehicle manufacturer, franchisor, or distributor "[t]o engage in any conduct which is capricious or not in good faith or unconscionable and which causes damage to a motor vehicle franchisee;" Section 407.825(7), which restricts a motor vehicle manufacturer, franchisor, or distributor's ability to disapprove a franchisee's proposed sale or transfer; and Section 407.825(5), which makes it unlawful for a motor vehicle manufacturer, franchisor, or distributor to "terminate, cancel, refuse to continue, or refuse to renew any franchise without good cause."

Plaintiff also alleges that Defendant violated the Federal Automobile Dealer's Day in Court Act ("ADDCA"), 15 § U.S.C. 1221, breached the implied covenants of good faith and fair dealing included in the Dealer Sales and Service Agreement, breached a fiduciary duty owed to Plaintiff, and tortiously interfered with the Shawnee Asset Purchase Agreement.

Plaintiff claims damages of at least $4,000,000, plus reasonable compensation, actual and reasonable expenses, and punitive damages under the MVFPA.

Defendant subsequently moved to dismiss the Complaint.

### Discussion

Because Plaintiff sold the Conklin Franchises to Shawnee, it has no claim under the MVFPA.  In addition, Plaintiff's factual allegations are not sufficient to state a claim for violation

of the ADDCA, breach of good faith and fair dealing, breach of fiduciary duty, or tortious interference with contract.

## I.     Plaintiff's claims under the Missouri Motor Vehicle Franchise Practices Act are barred by Mo. Rev. Stat. § 407.830.

Mo. Rev. Stat. § 407.830 states that a motor vehicle franchisor has a complete defense to any action brought under the Missouri Motor Vehicle Franchise Practices Act (MVFPA) if it can show that the franchisee "has ceased conducting its business or has abandoned the franchise." Defendant argues that Section 407.830 operates to bar Plaintiff's claims under the MVFPA.  Based on the plain text of the statute, the Court agrees.

Plaintiff contends that, if a franchisee's claim under the MVPFA evaporates once the franchisee ceases conducting business, a franchisee could never claim that the franchisor wrongfully terminated the franchise in violation of Section 407.825(5).  Such a reading, Plaintiff argues, would run afoul of the rule of statutory construction which favors just and reasonable results and requires the Court to presume the legislature "did not intend to enact an absurd law." Sugg. in Opp'n at 14, ECF No. 29 (quoting *Care & Treatment of Schottel v. State*, 159 S.W.3d 836, 842 (Mo. 2005)).  Given the text of the statute, however, the more applicable rule of statutory construction is the one which requires the Court give effect to a statute's plain meaning.  Section 407.830 prevents a motor vehicle franchisee from bringing an MVFPA claim "if the motor vehicle franchisee has ceased conducting its business or has abandoned the franchise."  In cases where a franchisor wrongfully terminates a franchise in violation of Section 407.825(5), the motor vehicle franchisee will have itself neither "ceased" conducting business nor "abandoned" its franchise. The terms of the statute are clear, and they do not lead to an absurd result.

Plaintiff also relies on *Ackerman Buick, Inc. v. Gen. Motors Corp.*, 66 S.W.3d 51 (Mo. Ct. App. 2001).  In *Ackerman*, a dealer operating a Buick franchise sought to purchase a Pontiac

9

franchise. When General Motors Corporation ("GMC"), who owned both Buick and Pontiac, denied the dealer's application for a Pontiac franchise, the dealer brought an MVFPA claim against GMC, arguing that GMC's denial of the franchise amounted to capricious, bad faith, or unconscionable conduct which damaged the franchisee in violation of section 407.825(1). *Id.* at 61. The Missouri Court of Appeals held that the dealer had no claim under section 407.825 because the MVFPA applies only to "franchisor-franchisee relations with respect to franchises granted by franchisors to franchisees and in the possession of franchisees *at the time of the alleged violations*." *Id.* at 62 (emphasis added). Plaintiff seizes on the italicized language to argue that Section 407.830 is inapplicable here because Defendant's alleged violations of the MVFPA occurred while Plaintiff maintained the franchise. However, *Ackerman* merely stands for the proposition that a car dealer cannot maintain a claim under Section 407.825 in regard to a franchise it does not own. *Id.* ("An examination of Section 407.825.1 as a whole indicates that the purpose of the statute is the protection of franchisees from the 'unlawful' practices of franchisors with respect to franchises in the possession of franchisees."). It does not mean that Section 407.830's bar on MVPFA claims is inapplicable where a franchisor's objectionable conduct occurs while the franchisee maintains the franchise and the franchisee later ceases doing business or abandons the franchise. *See also Stone Motor Co. v. Gen. Motors Corp.*, 400 F.3d 603, 606 (8th Cir. 2005) ("The district court granted the motion for summary judgment on the MVFPA claim since Stone was no longer engaged in the franchise business at the time it brought this action. The court concluded that it was therefore barred from suing under the statute, and Stone has not contested this ruling on appeal.").

10

Because Plaintiff voluntarily ceased doing business and abandoned the franchise when it sold the GM Franchises to Shawnee, Plaintiff is unable to bring a claim against GM for violation of the MVFPA (Counts I–III).[5]

## II. Plaintiff fails to state a claim under the Automotive Dealer's Day in Court Act.

The Automotive Dealer's Day in Court Act ("ADDCA"), 15 U.S.C. §§ 1221–26, grants a dealer a cause of action against an automotive manufacturer for failure "to act in good faith" in either 1) "performing or complying with any of the terms or provisions of the franchise," or 2) "in terminating, canceling, or not renewing the franchise with said dealer." 15 U.S.C. § 1222. "It is undisputed that 'good faith' under the Dealers Act requires the plaintiff to prove lack of good faith in terms of coercion, intimidation or threats." *Francis Chevrolet Co. v. Gen. Motors Corp.*, 602 F.2d 227, 229 (8th Cir. 1979); *see also* 15 U.S.C. § 1221 (e) (defining "good faith" under the ADDCA as "the duty of each party to any franchise . . . to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party."); *Sherwood Ford, Inc. v. Ford Motor Co.*, 875 F. Supp. 590, 593 (E.D. Mo. 1995). Coercion or intimidation requires a "wrongful demand." *Francis Chevrolet Co.*, 602 F.2d at 229; *see also Wootton Enters. Inc. v. Subaru of Am.*, 34 F. App'x 57, 62 (4th Cir. 2002) (collecting appellate cases).

Plaintiff's complaint includes no allegations that GM made any demand upon Plaintiff. As such, Plaintiff does not plead sufficient facts to show coercion or intimidation. Likewise,

---

[5] Defendant also argues that Plaintiff's Counts I–III should be dismissed because Plaintiff failed to exhaust its administrative remedies and because the Complaint lacks facts sufficient to show that Defendant engaged in bad faith, capricious, or unconscionable conduct causing damages to a motor vehicle franchisee in violation of section 407.825(1), that defendant prevented any sale or transfer of franchisee's franchise in violation of section 407.825(7), or that Defendant terminated Plaintiff's franchise in violation of section 407.825(5). Suggestions in Supp. at 9–14, ECF No. 17. In the alternative, the Court holds that Plaintiff has not alleged sufficient facts to state a claim for violation of the MVFPA. The Court does not address whether Plaintiff exhausted its administrative remedies.

Case 4:21-cv-00001-DGK   Document 42   Filed 12/13/21   Page 11 of 17

Plaintiff's complaint does not allege that GM threatened Plaintiff. Plaintiff therefore fails to state a claim for violation of the ADDCA (Count IV).

### III. Plaintiff fails to state a claim for breach of the covenant of good faith and fair dealing.

"[A] federal Court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law." *Stricker v. Union Planters Bank, N.A.*, 436 F.3d 875, 877 (8th Cir. 2006). Under Missouri choice-of-law rules, choice-of-law provisions within a contract govern a court's interpretation thereof. *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. 2012). The Dealer Sales and Service Agreement is therefore governed by Michigan law.

Under Michigan law, "[t]he implied covenant of good faith and fair dealing essentially serves to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms*." Lancia Jeep Hellas S.A. v. Chrysler Grp. Int'l LLC*, No. 329481, 2016 WL 1178303, at *9 (Mich. Ct. App. Mar. 24, 2016) (quoting *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 876–77 (5th Cir. 1989)). "However, there is no implied duty of good faith where the parties have 'unmistakably expressed their respective rights,' because the implied duty 'cannot override express contract terms.'" *Id.* (quoting *Stephenson v. Allstate Ins. Co.*, 328 F3d 822, 827 (6th Cir. 2003).

*Hubbard* involved a dispute between GM and a car dealer after GM denied the dealer's request to relocate. 873 F.2d 873 (5th Cir. 1989). The dealer sales and service agreement at issue in *Hubbard* "flatly precluded relocation absent GM's approval," and "[did] not limit the reasons upon which GM can base its relocation decisions." *Id.* at 878. Applying Michigan law, the Fifth Circuit held that the parties unmistakably expressed their respective rights, giving GM "the authority to approve or disapprove relocation for its own reasons." *Id.* The car dealer therefore had no claim for breach of the duty of good faith and fair dealing. *Id.*

12

Like *Hubbard*, the Dealer Sales and Service Agreements prevented Plaintiff from relocating without GM's approval. Dealer Sales and Service Agreement ¶ 4.4.2, ECF No. 17-2; Compl. ¶ 35, ECF No. 1 ("No change in location . . . will be made without General Motors prior written authorization pursuant to its business judgment."). Likewise, the Dealer Sales and Service Agreements do not limit the reasons GM may consider in deciding whether to approve a relocation request. Dealer Sales and Service Agreement ¶ 4.1, ECF No. 17-3; Compl. ¶ 35. (noting that GM's dealer planning considerations include considerations of sales and registration performance, competitive dealer networks, present and future demographic and economic considerations, Line-Make alignment, GM's ability to achieve its stated objectives, "*and other appropriate circumstances*." (emphasis added)). In this case, Plaintiff and GM clearly and unmistakably expressed their respective rights, reserving to GM the sole discretion to approve or disapprove a relocation request. As such, Plaintiff does not state a claim for breach of the covenant of good faith and fair dealing (Count V).

## IV.     Plaintiff fails to state a claim for breach of a fiduciary duty.

Michigan law also governs Plaintiff's claim for breach of a fiduciary duty. "Whether a forum selection clause that by its terms applies to contract actions also reaches non-contract claims depends on whether resolution of the claims relates to interpretation of the contract." *Reed v. Reilly Co., LLC*, 534 S.W.3d 809, 811 (Mo. 2017) (quotation omitted). Where resolution of a non-contract claim "would necessarily require an inquiry into the terms and enforcement of an agreement," the claim is governed by the contract's forum selection clause. *Id.* Plaintiff alleges that GM breached a fiduciary duty which arose from the Dealer Sales and Service Agreement and the resulting franchise relationship. Compl. ¶ 122, 123. *See also* Compl. ¶ 105–07, 120 (describing various provisions of the Dealer Sales and Service Agreement which allegedly give

GM disproportionate control over Plaintiff). Because resolution of the fiduciary duty claim requires the Court to review the terms of the Dealer Sales and Service agreement, Michigan Law applies.

In order to state a claim for breach of a fiduciary duty, a Plaintiff must allege facts establishing the existence of a fiduciary duty. *Highfield Beach at Lake Mich. v. Sanderson*, 954 N.W.2d 231, 247 (Mich. Ct. App. 2020). A fiduciary duty arises only between parties in a fiduciary relationship, which itself arises "from the reposing of faith, confidence, and trust, and the reliance of one upon the judgment and advice of another." *Ford Motor Co. v. Ghreiwati Auto*, 945 F. Supp. 2d 851, 865 (E.D. Mich. 2013) (quoting *Ulrich v. Fed. Land Bank of St. Paul*, 480 N.W.2d 910, 911 (Mich. Ct. App. 1991)). "Traditional examples of fiduciary relationships are: trustees to beneficiaries; guardians to wards; attorneys to clients; and doctors to patients." *Id.* Whether a fiduciary relationship exists outside of these traditional examples is a question of fact. *Id.* Nonetheless, because they are for-profit entities engaging in a commercial setting, Michigan law generally does not recognize a fiduciary relationship between a franchisor-auto manufacturer and a franchisee-dealership. *Id.* at 868 (citation omitted). There are three exceptions to this rule: 1) where an express statutory provision creates a fiduciary relationship, 2) where both parties understand "that a special trust and confidence has been reposed by the franchisee in the franchisor," and 3) "exceptional circumstances" wherein a franchisor possesses "near life and death economic power" over the franchisee and the franchise agreement requires the franchisee to provide reports concerning sales, inventories, customer data, and all information concerning the franchisee's business. *Id.* at 867–68 (citation omitted).

Plaintiff does not allege that any express statutory provision creates a fiduciary duty, nor does it point to any such statute in its suggestions in opposition to the instant motion. In addition,

14

the Dealer Sales and Service Agreement states that "[n]o fiduciary obligations are created by this agreement," and thus neither party could reasonably understand Plaintiff to have placed special trust and confidence in GM. Dealer Sales and Service Agreement, ¶ 17.1, ECF No. 17-3; *See Bero Motors v. Gen. Motors Corp.*, No. 224190, 2001 WL 1167533, at *5 (Mich. Ct. App. Oct. 2, 2001).

Finally, Plaintiff has not alleged exceptional circumstances. While Plaintiff is required to report data concerning its business to GM, Compl. ¶ 119; Dealer Sales and Service Agreement art. 9, 11, review of the Dealer Sales and Service agreement shows that GM does not wield life and death economic power over Plaintiff. Plaintiff alone "is responsible for promoting and maintaining customer satisfaction at the dealership." Dealer Sales and Service Agreement ¶ 5.3, ECF No. 17-3. Further, Plaintiff retains the right to participate in "dealer councils" to assist GM in making decisions affecting dealership operations. *Id.* ¶ 5.5. Finally, the Dealer Sales and Service Agreement does not grant GM the authority to create any obligation on behalf of Plaintiff or in Plaintiff's name. *Id.* ¶ 17.1. *See also Franklin Park Lincoln-Mercury, Inc. v. Ford Motor Co.*, 09-792, 2011 WL 5361738, at *3–4 (N.D. Ohio Oct. 31, 2011) (holding that a franchise agreement requiring a dealership to aggressively advertise, use Ford's accounting system; report sales as requested; keep records; submit to audits; meet performance objectives; maintain a specific vehicle inventory, minimum capital, and minimum staff; use Ford's signs; ensure the premises of the dealership maintain a specific appearance; and which granted Ford the right of first refusal in the event of a sale and the right to approve any change in franchise ownership; and provided grounds for termination of the franchise agreement, did not create a fiduciary duty because such provisions are typical of a franchisor-franchisee relationship).

Because Plaintiff has not alleged facts showing the existence of a fiduciary relationship between it and GM, Plaintiff has failed to state a claim for breach of fiduciary duty (Count VI).

## V.     Plaintiff fails to state a claim for tortious interference of contract.

Finally, Plaintiff claims that GM tortiously interfered with the Shawnee Asset Purchase Agreement.  In order to state a claim for tortious interference with a contract, a plaintiff must allege 1) a contract or valid business expectancy, 2) the defendant's knowledge of the contract or relationship, 3) an intentional interference by the defendant inducing or causing a breach of the contract or relationship, 4) absence of justification, and 5) damages.  *Birdsong v. Bydalek*, 953 S.W. 2d 103, 111 (Mo. Ct. App. 1997).[6]

Regarding the fourth element—inducing or causing a breach of contract or relationship without justification —Plaintiff merely alleges that GM placed "unreasonable restrictions" on the sale of Plaintiff's assets to Shawnee."  Compl. ¶ 132.  Assuming Shawnee breached the Shawnee Asset Purchase Agreement, Plaintiff fails to allege that GM lacked justification for its decision to deny the relocation request. [7]

"Absence of justification refers to the absence of a legal right to justify actions taken." *Vilcek v. Uber USA, LLC*, 902 F.3d 815, 819 (8th Cir. 2018) (quoting *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 20 (Mo. 2012)) (applying Missouri law).  However, "no liability arises if the defendant had an unqualified legal right to do the act complained of."  *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 317 (Mo. 1993).  Here, GM had the complete legal right to deny the relocation request according to its own business judgment.  *See id.* ¶ 4.4.2.  Plaintiff therefore fails to state a cause of action for tortious interference with a contract (Count VII).

---

[6] The Court does not have a copy of the Shawnee Asset Purchase Agreement, and thus does not know whether it contains a choice-of-law provision.  Regardless, both parties relied on Missouri law in their briefing regarding this cause of action.  The Court therefore assumes Missouri law applies.

[7] In the alternative, the Court holds that Plaintiff fails to state a claim for tortious interference of a contract because Plaintiff fails to allege that Shawnee breached the Shawnee Asset Purchase Agreement.  *See* Compl. ¶ 129–34, ECF No. 1.

**Conclusion**

Plaintiff has failed to state a claim upon which relief may be granted.  As such, Defendant's motion to dismiss is GRANTED.  Because the amendments to the Cadillac and Buick GMC asset purchase agreements, ECF No. 17-10, and Plaintiff's notice to GM of termination of the franchise, ECF No. 17-11, conclusively show that Plaintiff voluntarily ceased doing business and abandoned the GM franchises, Plaintiff's MVFPA claims (Counts I–III) are DISMISSED WITH PREJUDICE.[8]  Plaintiff's Counts IV–VII are DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Date:   December 13, 2021                           /s/ Greg Kays
                                                    GREG KAYS, JUDGE
                                                    UNITED STATES DISTRICT COURT

---

[8] *Vigeant v. Meek*, 352 F. Supp. 3d 890, 900 (D. Minn. 2018) ("Dismissals with prejudice occur where no amount of re-pleading will cure the deficiencies." (quotation omitted)).

17